and J.M., minors, people of the State of Illinois, versus Heather M. Are you ready to proceed? On behalf of the Petitioner of Health, people of the State of Illinois, the overriding policy and purpose of the Juvenile Court Act is to secure for each child subject to it such care and guidance, preferably in his own home, as will best serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community. To that end, the Act expressly provides that in all proceedings under it, a parent's right to the custody of their child shall not prevail when the court determines that it is contrary to the health, safety, and best interests of the child. In this case, Respondent's children were judged neglected. At the dispositional hearing, they were made wards of the court and guardianship was placed with DCFS and the children were placed with paternal relatives. The Circuit Court found Respondent fit, but under the circumstances determined that it was necessary to continue the children in their placement. On appeal, the appellate court reversed and remanded the case to the Circuit Court, finding that the court abused its discretion by failing to articulate the factual basis supporting its order. In doing so, however, the appellate court held that absent a finding that both parents were unfit, unwilling, or unable to care for the children, the court could not make the children wards of the court or place guardianship in custody with DCFS. The appellate court's decision and instructions on remand are erroneous in two ways. First, the appellate court erred in concluding that a child cannot be made a ward of the court unless the Circuit Court first finds that both parents are unfit, unwilling, or unable to care for the child. It was uncontested in this case that the children were correctly made wards of the court. Respondent did not object to the Circuit Court's determination to make the children wards of the court. And in stating that under the Act, children cannot be made wards of the court absent a finding of unfitness, the appellate court did not expressly discuss Section 221 of the Act, which governs that determination. Section 221 of the Act provides that at the dispositional stage of neglect proceedings, the court determines whether it is in the best interest of the minor and the public that the child be made a ward of the court. The court then enters dispositional orders and makes finding on parental fitness relevant to its disposition if it determines that it is in the best interest of the child that the child be made a ward of the court. If the court determines that wardship is not in the best interest of the child, then the proceedings would close. And it makes sense to allow the court to make children wards of the court, even if there is a fit parent. Wardship permits the court to retain authority to direct parents to cooperate with DCFS, to provide caseworkers with information, to comply with the terms of the service plan and obtain stable housing. In other words, wardship permits the court to monitor the family's progress and ensure that services are provided. We therefore ask this court to clarify that contrary to the appellate court's decision, under the Act, an abused or neglected child may be made a ward of the court if the court determines that doing so is in the best interest of the child. How do you address the argument that was made in the briefs, I think both sets of briefs actually, not yours, but that the grounds for restoring custody will already have been satisfied even before the placement begins if there is a finding of fitness in the record? With respect to placing custody? Right. The provisions of 223, which talk about restoring custody, specifically make reference to correcting the conditions that a parent that has been determined to be unfit can't be restored to custody if they have not corrected the conditions that led to the removal. And that would continue to be true with the parent who was found unfit or who was found to have caused the abuse or neglect. Under the dispositional hearing contemplates that there will be a permanency hearing and the other parent would be moving towards obtaining custody at that point. They just wouldn't be required to correct the conditions that 223.1 contemplates. There wouldn't be anything for them to correct with respect to the conditions that led to the neglect finding, but there were other services that were ordered in the dispositional order. So the court would be monitoring the progress towards those issues. For example, in this case, there hadn't been regular visitation with the children. The mother didn't have physical custody at the time of the placement. There was also a mental health assessment that had been ordered that had not been completed. And so those steps would need to be taken to ensure that the best interests of the child are met. It's pretty clear that the circuit court did not put factual findings in writing. What are we supposed to do about that? And that's why the appellate court remanded the case. And we agreed that the case should proceed back to the circuit court for the factual findings. We're asking that the remand be affirmed, but that the Third Circuit's decision be reversed to the extent that, first, it holds that the court was not authorized to make the children wards of the court absent of finding unfitness. And second, to the extent that the appellate court erred in concluding that the court cannot move on to a best interests analysis unless at first time the parents are fit with respect to guardianship and custody of the children. They said under Section 222.1, it's the proper disposition best serving the health, safety, and interests of the minor that is the primary concern. And while Section 227.1 indicates that the court should make a finding as to whether the parents are unfit, unwilling, or unable to care for the child, and whether placement is in the best interests of the child, Section 123C of the Act indicates that paramount importance is the child's best interests and provides that the parent's right to custody shall not prevail when the court determines it is contrary to the health, safety, and best interests of the child. So we just read out 227? It must have some meaning. Of course. And in most cases, placement with a fit parent achieves the best interests of the child. But there are some cases in which placement may be found necessary even if there is a fit parent. And where does that fit in the language of the statute? The statute says if the court determines and puts in writing the factual basis to determine whether the parents are unfit or unable to care for the child and the best interests of the child are required, then the child can be placed with someone other than his parents. So the specific statute has these two requirements. There's an and. Finding unfit, unable, or unwilling, and best interests. How do we interpret the statute? The court considers both. Certainly there is a finding with respect to the fitness, willingness, and ability of the parent, and the best interests of the child. I think the primary concern of the statute is achieving the best interests of the child, which in most cases occurs in placement with a fit parent. I think the statute contemplates that in most cases you would be removing the child from the home that they know, from the custody of the parents in the home that they know, and you don't want to disrupt their familiar placement, perhaps in a finding of unfitness. But you understand that you assume you can see that the fact that the child had been in one home and now it was going to be placed with the other parent would be moved to another home, but that's not unfitness, unwillingness, or inability to care for the child, as required by the statute, as the language of the statute sets out. But that's not one of the factors, right? That is not one of the specific factors of the statute. So we ignore the factors? We don't ignore the factors in the sense that the court still makes the finding with respect to whether the parents are unfit, unwilling, or unable to care for the child, but we recognize that in some cases placement is necessary at this stage of the proceedings based on the best interests of the child. And Section 23C of the Act expressly provides that the parents' right to custody shall not prevail. The General Assembly has articulated that the parents' right to custody of the child shall not prevail. That's really your argument, right? I mean, the broad language that the best interests of the child really trumps everything. Is that basically your argument? I mean, you don't have an argument against the plain language as asserted by Justice Tice, right? You're not saying that the plain language says something different than Justice Tice articulated? No. We're saying that in some narrow circumstances, in considering both, the best interests of the child may prevail over the best interests of the child. And you cite some cases that would suggest that that's the way the court should go, but again, my question still remains. In all procedures under this Act, the parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the health, safety, and best interests of the child. 23C, that's the statute you've just been talking about. So you're saying that basically trumps even the plain language of the statute that we've just been talking about. In some cases where placement is necessary, yes, at this stage of the proceedings, the best interests of the child trump the finding that the child is unwilling or unable. And that's consistent with this Court's decision in Austin W. In that case, the court considered whether to make a change to a dispositional order and whether there needed to be a change in circumstances for the court to consider that. And the court held that that was not the case, that the child's best interest is not part of the equation. It is not to be balanced against any other interest. In custody cases, the child's best interest is and must remain the paramount consideration. And following that authority, other lower courts have held, the appellate court has held, that even absent a finding that the parent is unfit, unwilling, or unable to care for the child, placement may be necessary at this stage of the proceedings based on the best interests of the child. So you're really saying that 227 is really procedural in nature and that not a necessary requirement or prerequisite for the court to place the child with someone other than the parents? I'm not sure I understand your question. Well, you seem to agree that the section requires it to be in writing, and so it should be remanded for that. But what it goes on to talk about, as has been pointed out, unfitness, and that it's in the child's best interest. What you seem to be saying is that the child's best interest trumps the unfitness aspect, that these are not prerequisites in order for the court to place the child with someone other than the parents. Well, it's certainly a consideration. I mean, the court certainly must make findings with respect to whether the parents are unfit, unwilling, or unable. But in these rare circumstances where the best interests of the child requires placement, the court shouldn't be constrained even if it hasn't at that stage of the proceedings found that the parents are unfit, unwilling, or unable. So you're saying that it's a procedural requirement, but that substantively, even if you don't have the unfitness or inability, you still can place the child if it's in the child's best interest. Is that what you're saying? Well, it's substantive in the sense that the court is still making the findings, and those findings are still subject to review, and they can be reviewed in terms of whether the evidence supports the findings. There would still need to be evidence in the record that the placement was necessary, that there was good cause to make the placement even absent a finding of unfitness. To follow up on Chief Justice Garment is that even some of the findings aren't always permanent. Until there's legal guardianship for adoption. So some of these findings that the court makes can definitely be redetermined. Certainly, because at this stage of the proceedings, at the dispositional stage of the proceedings, there are further proceedings contemplated. There's a permanency hearing that's expected to be held within six months, and that can be continued on. And all of those proceedings can be appealed because they're only interlocutory in nature, in a way. Yes. Because they aren't permanent until there's... Right, until either the parents are restored to custody or there is a termination proceeding. On remand, if this goes back, then you could contemplate an order the court could enter finding that the parent, this parent, was not unfit, was not unable, and was not unwilling to take care of the child, but the best interest requires the child to be placed elsewhere. Is that correct? That is correct. In this case, the circuit court made a finding that the mother was fit, but it did not specifically address whether the mother was unwilling or unable to care for the child. And that's one of the bases for the remand. The appellate court said that the circuit court did not address those two prongs and also did not articulate the factual basis for its decision. Okay. But are you saying if the circuit court says that the mother is not unable and not unwilling, that the child could still be placed someplace other than with the mother? That the circuit court could still articulate the findings that placement was necessary based on the best interest of the child. And is it your position that there are not constitutional implications because it's temporary custody versus termination of parental rights? Our interpretation that placement as necessary in the best interest of the child does not run afoul of the Constitution because unlike the cases on which respondent relies, unlike Troxell and Wickham and some of the cases that are cited, the state has a compelling interest here. These are children that have been adjudged neglected, and that brings the state's interest into play. And also, the parents are afforded procedural protections through this process. They are a party to the dispositional hearing. They can present evidence. They are a party to the proceedings. And so our interpretation of the provision does not run afoul of the Constitution. You mentioned earlier that there were other factors that constituted the ruling, right, outside of the fact of a finding of – although there was a finding of fitness, you said there were these other factors that were considered. What were those? This statute contemplates that the court can make a finding of unfit, unwilling, or unable for reasons other than financial reasons alone. And while the court made a determination that respondent was fit in this case, it did not specifically address whether she was unwilling or unable to care for the child. And that's what's on remand? That is on remand, as well as the fact that the circuit court did not articulate the factual basis for its decision to place custody of the children. And our position is that even absent the finding of unfit, unwilling, or unable, the circuit court could still make placement as necessary based on the best interests of the child. And that's consistent with this court's decision in In Re RLS, because nothing in RLS overrules cases decided under the Juvenile Court Act. RLS concerned the standing requirements of the Probate Act, and more specifically whether courts were required to apply the standing requirement of the Marriage and Dissolution of Marriage Act when considering custody petitions under the Probate Act in order to satisfy the requirements of due process. RLS overruled cases like In Re Custody of Townsend and People X Rel Edwards v. Livingston, on which some juvenile court cases have relied, but only to the extent that those cases misapplied the Probate Act. Nothing in this court's RLS decision indicates that under the Juvenile Court Act, cases need to be treated the same way as they are under the Probate Act. And that makes sense because the Juvenile Court Act addresses a separate issue. In cases like this, the children have been judged, abused, or neglected, and so it's important to make the disposition best serving their health, safety, and welfare. And as noted, we think that it's our position that allowing placement outside parental custody when necessary based on the best interests of the child does not offend due process. The state recognizes that parents have a fundamental liberty interest in the care and custody of their children, but again, that right is not absolute, and the state has a compelling interest when there's been an adjudication of abuse or neglect to step in. And at this state, in the context of neglect proceedings, this is only a temporary infringement on parental rights, and it's warranted particularly where a tier of procedural protections are provided to the parents. Unless there are further questions. I don't believe so. May it please the court. May it please the court. My name is Louis Melo. I represent the respondent, L.E. Heather M. The respondent is asking this court to affirm the third district appellate court's decision. The record shows that the trial court did not consider the respondent's superior right to the custody of her children. The trial court properly found the respondent fit, but erroneously ordered a DSFS guardianship and found that placement outside the respondent's care was necessary. In reversing, the third district filed a black letter and clearly established the law under the Juvenile Court Act. The trial court's decision authorizing the respondent's children to be placed outside her care was inconsistent with the Juvenile Court Act and because she was found to be a fit parent, contrary to the Constitution. Heather's fitness, ability, and willingness has not been appealed by the state and is not before this court for this appeal, and a remand for additional findings in that regard would be inappropriate. By insisting that the only consideration for removal of a child from a fit parent's custody is the best interest of the child, the state is asking the court to overrule its previous decisions and engage in a legislative act of excising from the Juvenile Court Act language requiring a parent to be found unfit, unable, or unwilling before a minor may be removed from the parent's custody and care at a disposition. That state's interpretation of the Juvenile Court Act runs roughshod over the plain language of the act and is incompatible with the constitutional principles that have developed in this area. It disregards the carefully crafted statute that attempts to balance the state's interest in protecting children against the higher constitutional standard for removal of a child from the custody and care of a parent. Presumably, counsel, when this goes back, I mean, just looking at the record as we know it, right, chances are that the judge would indicate that the reason was for some mental health issues, right, disqualifying mental health issues, because the state didn't give a reason, right, and the guardian ad litem said, well, there's some disqualifying mental health issues. Is that presumably what the factual basis is? I can't obviously predict what the judge will decide and what the basis for his decision will be, but I will argue today that he is going to have to decide based on the record before him on remand. And what's before him is evidence that my client did have a mental health condition, but that she was managing that condition, she was taking her medicines as prescribed, and the fact of the matter is there was absolutely no evidence presented at the trial level to suggest that she was unable to care for her children or that her children's best interest would be jeopardized in her care. So even if that were up on appeal, I would argue it's not because they didn't appeal it. I don't believe the facts, any combination of facts before the court would rise to the level of finding my client unable and certainly we already know she's been found fit. Well, I'm thinking of it, you know, again with this overriding best interest standard, and what you're talking about would really go really to, we have a broader question here, right, whether or not with a finding of fitness, whether or not temporary custody can be awarded to someone other than the parent when there's a finding of fitness. What if we have the situation in which there is testimony? Because, you know, the question I asked and the question you answered, it's one step removed from that, right? It's where maybe we thought that you could do it in the first instance with a finding of fitness and whether or not the judge abused his discretion in doing it. So that's a different question. I agree with you. But back to the situation, what happens if there was testimony and the testimony was from a doctor who indicated, well, she's basically fit but she has to take her meds for another month or so before I would say that she should have custody of her children? What do we do in a case like that? Well, I think you might have answered your own question in the sense that let's begin with a proposition that parents walk into juvenile court fit, able, and willing. That's the default status of walking in. It's incumbent upon the state and the burden is on the state to prove otherwise. Under your factual scenario, the state, whatever evidence they present, they present evidence to suggest that this parent has a deficiency, serious enough that that parent may not be able to care for the child. So whatever it is has to rise to the level of unfitness. Or unable or unable. Unwilling or unable. Right. In this case, the evidence was to the contrary. The evidence actually established that she was fit, number one. There was no evidence that she was unable. And our practice in the Juvenile Court Act in Peoria County is that if that box is not marked, then there's no finding of unable or unwilling. It's not an accident. Excuse me, Mr. Mullock. What about some of the other facts? I mean, we don't have a record in front of us, but did the parent have a relationship? When was the last time your client saw her children? How many times did they interact? I mean, there's other facts besides the unfitness and mental health issues that a court would take into consideration, and apparently the record isn't really factually giving us that information. Correct. It's not true that she didn't have regular visitation coming into it. But here's the thing. There's two ways to answer this. I guess one of them is that assuming she had no contact with the child or children in this case for a year, two years, whatever, it's interesting because the child was placed, and I would call it a backroom deal between the state, the grandparent, and the father, through an order of protection. There was no temporary custody order entered in this case. And they took the child and replaced it with the parents. I didn't see any hearing. There was no hearing evaluating whether the grandparents, the relative placement in this case, would be appropriate. It was in the best interest of what relationship they had with the child. So what we typically find in the juvenile court case oftentimes is that the child's placed in a traditional foster replacement. That foster person has never had a relationship with that child ever. And so you're basically on equal footing in that regard in terms of prior contact. The other thing in this case, obviously, is on the state. The state did not put that evidence on to show she had no contact. They alleged that her whereabouts were unknown at one point. That was stricken. That was not the case. Obviously, she was, and she appeared when she knew of the court case. But this is a unique situation because, obviously, we have, and the court's well aware that the express language of the Juvenile Court Act requires a predicate finding of unfitness, unwilling, inability. We have a situation where my client, and there are other issues, completed certain services addressing relational problems, a domestic violence class, a parenting class, all before this decision was made. In fact, the court reviewed the evidence. The court reviewed the testimony. The court reviewed the report to the court and concluded that Heather was not unfit, not unable, not unwilling, and didn't even make a finding that it would jeopardize these children's care to be in my client's care. Heather contends that the state's approach would violate her constitutional 14th Amendment rights. This court has made it clear that parents possess a fundamental right to make decisions about the care, custody, and control of their children without unwarranted state intrusion, and that principle is embedded in our jurisprudence. The Stanley v. Illinois case reminds us that familial bond of a parent-child relationship is a reciprocal right. So we're thinking in terms of, well, what's my client's rights to her children? Her children have a right to have a relationship with her as well. I'm thinking more, you know, we talked about the statute and the overriding best interest and all that. Just thinking more public policy-wise, and this is a different case in that the state and the guardian both came in and said, your client should be found fit, right? But they actually told the judge, your client should be found fit. But yet had at least the guardian addressed some mental health concerns and requested that there be the temporary custody. I mean, is it one of those battles you choose to win or fight and battles you choose to win? I mean, might not this provoke the next time in somebody else's case where they take the same factors and say and pursue a finding of unfitness and now, you know, you have a respondent that's found, you know, if the judge goes along with it on the mental health issues, goes along with it and now on top of everything else there's a finding of unfitness rather than just a temporary custody order with a finding of fitness. Just kind of policy and where we're at. Well, I'm going to assume that the judge who makes decisions at the trial level is making the best judgment based on the law, based on the facts, in that I believe that in circumstances such as ours, the facts will not cause the judge to make that determination that you've suggested. There may be facts that might cause that to happen, but a parent isn't entitled to that initial determination. If a parent's entitled, no, where do I stand? You know, there was a sudden... All I'm trying to say is if we agree with your position here that in this case occurred in different parties or whatever and the state and the guardian really felt that a temporary custody order was warranted, they would, if we ruled your way, have to put forth a case that indicated that the respondent was either unfit, you know, unwilling or unable and they would have to say that this, in this particular set of facts, they would have to say that this emotional context and further emotional treatment, as the guardian put it, would put it in a position where they would have to assert unfitness to make sure that a temporary custody order was sent. And they're certainly free to make whatever assertions they want to make. Whether they can prove those assertions is an entirely different matter, and I would submit that, prove it. Then, if we don't like it, we have recourse to the appellate court. Is it against the manifest way of evidence or isn't it? But I think that, and we do have a problem because the juvenile court does not help us in defining what fitness is and what inability is, but that's something that's sort of evolved through the case law. What makes our situation unique, and a lot of the thought process that we have, especially the earlier decisions, is the assumption that if one parent is found unfit, then, you know, we throw the baby out with the bathwater, no pun intended, but essentially that's what happens. But we have a different society today. We have parents who are not living together. One parent may be responsible for abuse or neglect of the child, while the other parent may not have been aware of it, as was the case here. NRACL, NRAMK are two cases that kind of address that. And they basically found that if one parent, even if one parent is determined to be unfit under the Juvenile Court Act and wardship arises, the other parent's rights are still superior to the state's interests. So they recognize this new situation we have in our society. So by analogy, in our situation, when one parent is found dispositionally unfit and the other parent is without fault and willing to assume the role as a responsible parent, the court may not interfere. Tell me how under your analysis, counsel, under the Juvenile Court Act, is it possible for the court to find a neglected or abused child, make them a ward of the court, before there's a finding of unfitness as to both parents? Well, the court at NRACL assumed that that was a possibility because... Or are you saying you could be made a ward, the child could be made a ward of the court, but the court can't place the child with someone other than a parent unless there's a finding of unfitness? Exactly. Our position today is that if the parent is able, willing, and fit, then placement would be with that parent, and that parent should be the guardian. Now, the court may want to make the child a ward of the court for purposes of ordering services, for example, but it's not necessary. The decision of whether to make the child a ward of the court is a best interest decision. Isn't it the best interest of the child to be made a ward of the court, given the fact that I have a fit parent who's ready, willing, and able to care for this child, or not? In some cases, as suggested earlier, we need to know more about the situation. The court can do that, maintain wardship over the child as this information comes in. The assumption can't be that the information is always going to be negative to the parent. It may be favorable. You may say, wow, I didn't know they were that great. We're closing this case right now. So I think the practicalities of the Juvenile Court Act and how it operates, we would probably leave that door open for the court to decide on the wardship. But isn't it in this situation the child was a ward of the court because of the abuse and neglect, and in most cases the child comes in under those circumstances, they become wards of the court, and then move on to other best interests of the child in a permanency hearing where the child should go. Right. So the fact that there was abuse or neglect is sort of the entry. The impetus. Yeah, it allows the court to even look at the situation, even look at the family. So that's the compelling state interest. And that's going to go on throughout the life of the case. But it doesn't provide an additional argument for saying that a parent's fundamental rights can be ignored. There's still a process after that. And I think Troxell, and while many of these cases did involve termination, RLS didn't involve termination. The probate cases don't involve termination. They're questions of standing. The parents' rights aren't being terminated. So, yeah, it continues to be an issue. It gets the case in front of the judge, but that's not the end of the story. There's still the fundamental rights that have to be honored. The state's interpretation extinguishes those presumptions associated with a non-offending parent's fitness and implicitly shifts that burden to the parent. The state's interpretation would also create incongruities in the Juvenile Court Act. For example, it misapprehends the nature of fitness under the Juvenile Court Act. Implicit in the state's approach are gradations of parental fitness, where a child might be returned home to some fit parents, while not to other fit parents where the court, for some reason, has reservations. There's no clarity about how the trial court is supposed to sort out the really fit parents from the ones that aren't so fit. This will surely spawn numerous appeals seeking or challenging the trial court's subjective or occasional arbitrary classification. And such gradations run contrary to the federal court's decisions that have rejected the idea of fit or reserved. In other words, there is no intermediate fitness. You are either a fit parent or you're not a fit parent. In this case, there was no evidence at the dismissal hearing to support the finding that Heather did not adequately care for her children. Again, the state has the burden. Let's not forget, my client did not contribute to the neglect. She had previously completed her parent class, domestic violence classes. There was no evidence presented to show that her mental health condition actually affected her ability to care for her and parent her children. So there's no nondiscriminatory basis for placing her children outside her care. Even in the Juvenile Court Act, the dispositional is the final hearing or appealable hearing. Yes, there are continuing things that go on, but the reality is that you're not back in court usually six months later. There's nothing in the Constitution of the Juvenile Court that disdains contemporary and permanent custody for purposes of whether the parents may have taken the child out of custody. Even the Juvenile Court Act allows for, in the post-dispositional phase, for a goal of permanent guardian. And that... I'm sorry, I passed my time. Thank you, counsel. Thank you. I would just like to address a couple of points that the respondent made. First, the appellate court expressly stated in its decision that remand was, in addition to stating the factual basis on which the decision of placement was necessary, but also because the circuit court had not made a finding as to whether a plaintiff was unwilling or unable to care for the child. And so that was one of the reasons why the appellate court remanded the case. And so there is room for the circuit court to come back and determine that the parent was unwilling or unable to care for the child in this case. I'd also like to note that the state interest here isn't just in the welfare of abused and neglected children, but it's also in establishing stable homes for children that have been adjudged abused or neglected. Here, the dispositional report that was done on the respondent, that's in the record, indicates that she did not have physical custody of the kids at the time, nor did she have regular visitation with the children. And so it was reasonable for the court to conclude that placement was necessary based on the best interests of the child. It was reasonable to conclude that placement in this case created a more stable home for the children than would a new unfamiliar setting for the children at that dispositional stage. And while the state alludes to sort of a backdoor deal between the state and the court within the parents and grandparents, or the father and grandparents with respect to placement with paternal relatives, the statute itself indicates a preference for placement with relatives over a stranger foster placement. Could you help me? I'm real basic here. I'm a statutory interpretation. Kinds of dispositional orders, 223. A minor under 18 of age, upon to be neglected or abused or depended. And then there are four authorized kinds of dispositions. Continuing the custody of the parent, whatever 227 means. Restored to the custody of the parent with perhaps conditions and emancipation. Those are the four orders the statute allows, correct? Correct. Okay. So here, the only possibility for placing the child, these two children, with someone other than the mother here. Remember, we all know the father is the one that was, the children were living with the father separate from the mother. Father is the one that allowed the children to be in an injurious setting because his new girlfriend was abusive to the other child. There's been no allocations as to the mother that we're talking about here. In any case, am I wrong in reading this four authorized kinds of dispositions? The only way, the only one of those four that would trigger placement with someone other than this mother would come under 227. That's correct, under 227.1. And 227.1 directs the court to make the finding as to whether the parent is unfit, unwilling or unable to care for the child. And whether placement would be in the best interest of the child. But in these sort of unique circumstances where we're not talking about removing the child from the familiar stable home that they've been in, but placing the child in a new unfamiliar setting with the fit parent who has not had regular visitation with the child, didn't have physical custody of the child, children at the time of placement, the best interest of the child in those cases may make placement necessary. And so because of the unique facts of this case, the statute doesn't apply. It says there are four kinds of authorize our orders. You agree there's only one of those four would be under 227. And you're saying we've all agreed 227 has two components, unfitness and best interest. And I'm just concerned about statutory interpretation. How do we read out the word and out of the statute? Well, the cardinal rule of statutory construction is to follow the intent of the general assembly. And in this case, they've articulated that when the best interest, that the parent's right to custody will not supersede the best interest of the child. And in this case, and there are going to be... Because we're concerned about the best interest of the child, we're going to assume that the legislature did not mean and? Is that what you're saying? I'm saying that the court looks to whether there is a fit, willing, and able parent. But in the context of this case, where you're not removing the child from the familiar home, you're not ensuring a stable home for the children by placing them in a new placement where there are unanswered questions. There's not an established parental relationship. There are questions as to... There were mental health assessments that needed to be completed that hadn't been at the time. And so it just... In the context of this case, the best interest of the child may be placed in the necessary, even under 27.1. Will the remand... I'm trying to... You mentioned when you first got up for rebuttal that there's still the possibility that the judge would indicate either unable or unwilling. Yes. So if this court agrees with your argument today, right, whatever it was remanded for is really off the table, isn't it? Are you arguing alternatively that under this best interest standard, the judge could do exactly what he did here, maybe short of putting in his factual finding, and could find the respondent both fit and willing and able, and yet you could prevail? And then it seems like you have an alternative argument when you got up here again and said, well, the judge, even if we rule that there has to be a finding of unfitness, being unwilling or unable, there's still a chance on remand that could happen. Yes, that's correct. We don't think that the unwilling or unable... We don't think that it's necessary on remand for the court to find unwilling, that the respondent was unwilling or unable, but that's still within the court's authority to do the remand. So if we go with your alternative argument then, it's already remanded for factual findings? It's already there for factual findings? It is already remanded. The appellate court remanded the decision, yes. Okay. Was there anything in the appellate court that talked about a remand to find whether it's unwilling or unable? Or you're saying that's for us to do? There's still enough here where we could... I'm sorry. We could remand and say, although there was a finding of fitness, there wasn't a finding of unwilling or unable, and it's remanded to see whether that finding takes place. Is that what you're asking as well? Well, that's what the appellate court did. The appellate court noted that that respondent was found fit, but there were not specific findings as to unwilling or unable and then that the factual findings... So is it a little premature that it's here? Well, the appellate court made the sweeping decisions that the child cannot be made a ward of the court absent a finding of unfitness, and that guardianship and placement cannot be made with somebody other than the parent where there's a finding of fitness. And so we would ask the court to clarify the standards to at least vacate the decision below. But yet you'd agree if the remand had occurred first, if the decision had been made on whether... Let's say they found out, the trial court said the respondent is unwilling. Let's just, for purposes of argument... Well, then it moots everything we're talking about today, right? At least as far as this case goes. As far as the facts of this case go, but the standard is still... There's still a published decision with the standard that is incorrect. So we would ask the court to clarify the standards for the courts. Okay. Or in the alternative, to vacate the third district's decision on remand. Unless there are other questions, we ask the court to affirm the remand, but reverse the appellate court decision to the extent it finds that the children cannot be made wards of the court or guardianship in custody of the children placed with a third party absent a finding of unfitness. Thank you. Case number 119932, Inree M.M. and J.M. Miners, People of the State of Illinois v. Heather M. will be taken under advisement as agenda number three. Ms. Hanson, Mr. Melo, thank you for your arguments this morning. You are excused at this time.